UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| TIDAESHA TAYLOR, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | Case No. CV615-026 |
| | ) | CR613-004 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

After pleading guilty to wire fraud and aggravated identity theft, Tidaesha Taylor moves under 28 U.S.C. § 2255 for resentencing. Doc. 142.[1]

## I. BACKGROUND

As detailed by the Eleventh Circuit:

Taylor pleaded guilty to one count of conspiracy and one count of aggravated identity theft pursuant to a written plea agreement. The plea agreement contained a waiver-of-appeal provision in which Taylor waived her right to directly appeal or collaterally attack her convictions and sentences, except . . . [for her] right to appeal the amount of loss attributed to her. At the change-of-plea hearing, Taylor admitted that she had worked with her brother and aunt to obtain personal identification information and file false tax returns. Taylor's role was as the secretary in what the coconspirators called "the Office," a small apartment in Statesboro,

---

[1] All citations are to the criminal docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

Georgia. Between January and March 2011, Taylor answered phones, set appointments, checked on the status of filed returns, and greeted people who came to the Office to file returns. The co-conspirators filed approximately 155 returns during that period. Taylor knew the returns were fraudulent.

At sentencing, the court held Taylor accountable for an amount of actual loss of $208,231, which was based on the total amount of fraudulent tax returns filed during the January to March 2011 time frame. This resulted in a 12–level increase in her offense level under U.S.S.G. § 2B1.1(b)(1)(G). Taylor faced an advisory guideline range of 41 to 51 months' imprisonment on the conspiracy count. The aggravated identity theft carried a mandatory 24–month consecutive sentence under 18 U.S.C. § 1028A(a)(1). Taylor objected to the 12–level enhancement, arguing that she should be held responsible for only a portion of the loss because she was a part-time employee at the Office and was only involved for 3 months. The court disagreed because the amount of loss reflected only those returns in the relevant time period, and Taylor was responsible for the foreseeable acts of her coconspirators. The court sentenced Taylor to 51 months on the conspiracy count and a consecutive 24 months on the identity theft, for a total of 75 months' imprisonment.

*United States v. Taylor*, 578 F. App'x 966, 967 (11th Cir. 2014).

About six months after the Eleventh Circuit affirmed her sentence, *see id.* at 968, Taylor filed the present motion. She originally asserted four ineffective assistance of counsel ("IAC") claims: (1) her attorney, Attilio Balbo, failed to object that her sentence exceeded the statutory maximum; (2) he failed to request evidence from the government supporting the loss amount used to calculate her recommended sentence;

2

(3) failed to object to the "victims" enhancement; and (4) advised her to plead guilty "to a count in which she was actually innocent of." Doc. 143 at 3. In a motion to amend (doc. 156),[2] she asserts one more claim: that Balbo provided ineffective assistance by failing to tell her she could plead guilty without a plea agreement, and thus without an appeal and collateral-attack waiver. Doc. 162 at 3. Because that last claim implicates the Government's reliance on her plea agreement's waivers (*see* doc. 145 at 7-9), the Court addresses Taylor's fifth claim first.

## II. ANALYSIS

### A. IAC - The "Straight Up" Plea Option

Although she "didn't have knowledge" of the claim at the time she filed her original § 2255 motion, Taylor now argues "that she received [IAC][3] because . . . Balbo did not advise her of the right to submit a plea

---

[2] The Court **GRANTS** that motion (doc. 156) and will consider the claim it presents.

[3] Proving ineffective assistance requires showing "both that . . . counsel provided deficient assistance and there was prejudice as a result." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). Representation is deficient when it falls "below an objective standard of reasonableness." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). And a petitioner establishes prejudice by demonstrating a reasonable probability "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*; *see also Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1385 (2012) (for plea-stage deficient performance, prejudice requires movant to show a reasonable probability that "the outcome of the plea process would have been different with competent advice").

3

of guilty directly to the court." Doc. 156 at 2 (footnote added). Despite meeting with him "on a few occasions to discuss the plea agreement," Balbo, she says, "informed her that her options were to cooperate, go to trial, or accept the plea agreement offered by the government." *Id.* "At no point" did he "inform her of the right to plead guilty [straight up]." Had he done that, "she would have pled guilty directly to the court in order to preserve her right to appeal and collaterally attack her sentence." *Id.*

The Government leans on Taylor's appeal waiver to urge denial. Doc. 158 at 2-4. Should that argument fail, it also contends that Taylor cannot demonstrate prejudice from any failure by Balbo because the plea agreement she accepted -- one that eliminated 17 of 19 counts -- significantly limited the prison term she faced. *Id.* at 4-6.

At least one court has concluded that counsel's failure to discuss the "straight up" pleading option with a defendant constitutes deficient performance. *See West v. United States*, 2013 WL 1798945 at * 3 (M.D. Fla. Apr. 29, 2013) (reasoning that while pleading "[straight up] carries some inherent risks which counsel must discuss with his client, *Dasher v. Att'y Gen., Fla.*, 574 F.3d 1310, 1317–18 (11th Cir. 2009), it is

nonetheless an available option which must be discussed with a defendant"); *id.* ("West would not be the first defendant to reject a plea agreement and plead "straight up" to an indictment in order to litigate sentencing issues. *E.g., United States v. Rafael*, 163 F. App'x 761, 762 n. 1 (11th Cir. 2005)."). Assuming *arguendo* that's true and *West*'s principle applies here, Taylor's claim nevertheless dies because, as the Government correctly notes, she cannot demonstrate prejudice from Balbo's failure to tell her about a "straight up" plea.

Recall that "[t]o establish *Strickland* prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 132 S. Ct. at 1384 (quotes and cite omitted). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* When, for example, deficient performance leads to plea rejection, a defendant must show "a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its

terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385.

Taylor in effect unknowingly rejected a "straight up" plea (she also rejected a trial) by choosing the agreement she ultimately signed. Hence, to show prejudice she must establish a reasonable probability that (1) she would have pled guilty "straight up;" (2) the Court would have accepted her plea; (3) she would have then appealed or collaterally attacked her sentence; and (4) her sentence after that appeal or collateral attack "would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 U.S. at 1385. She swears that, had she known of the "straight up" option, she would have taken that route (prong 1 satisfied). *See* doc. 156 at 2. And there's no reason to think the Court would have rejected that guilty plea given its acceptance of her plea, and the factual basis for it she admitted, pursuant to an agreement with the Government (prong 2). Because Taylor also declares that she would have pled without an agreement in order to preserve her appeal and collateral attack rights (prong 3), *id.*, only prong 4 presents a serious question.

Before pleading guilty, Taylor faced a nineteen count indictment. Doc. 1. Her plea agreement eliminated seventeen of those counts, including nine for wire fraud and eight for aggravated identity theft (she pled guilty to one count of wire fraud conspiracy and one of aggravated identity theft). Doc. 120. It did so in part because Taylor waived her right to appeal and collaterally attack her conviction and sentence. *See* doc. 117 at 7.

If she pled guilty without the agreement, Taylor almost certainly would have incurred a longer sentence than the one she ultimately received. In addition to the sheer volume of charges she would have faced, the additional aggravated identity theft counts each carried a two year mandatory minimum, and each required that their sentences not be served concurrently to any other term of imprisonment. Indeed, during her plea colloquy, the district judge pointed out that she faced a maximum imprisonment term of 218 months without the plea agreement and a 22 year maximum with it. Doc. 137 at 35.

Taylor argues that she suffered prejudice from foreswearing her direct and collateral appeal rights. Doc. 162 at 3. Although one can establish prejudice by demonstrating counsel ignored a request to file a

direct appeal,[4] prejudice in the context of foregone plea agreements occurs when the sentence and judgment foregone "would have been less severe than" those imposed. *Lafler*, 132 U.S. at 1385. Taylor can't show that, so her "straight up" plea IAC claim fails.

Even if she could, her plea agreement's collateral attack waiver bars her claim. Waivers like Taylor's "will be enforced if the government demonstrates either: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver." *United States v. Benitez–Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997).

By signing her plea agreement, doc. 297–1 at 28, Taylor confirmed that she read and understood the entire document, including the collateral attack waiver. And, after the government read the above waiver into record at her plea hearing, Taylor stated that she understood that she waived her right to her attorney for ineffective assistance. Doc. 135 at 26-27. She also understood that, "in all likelihood," she gave up

---

[4] *See Peguero v United States*, 526 U.S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit.").

her right to "complain with any hope of relief about anything that has occurred in this case." *Id.* at 26. Because the district court specifically questioned her about the waiver and the plea hearing transcript makes clear that Taylor understood the impact of that waiver, it is enforceable and she cannot now complain about counsel's plea advice. *Benitez–Zapata*, 131 F.3d at 1446.

### B. IAC - Sentence Exceeded Statutory Maximum

As noted above, Taylor pled guilty to conspiracy to commit wire fraud, and aggravated identity theft. Her conspiracy charge served as a predicate offense for the identity theft count, which included a mandatory two-year prison term *consecutive* to her conspiracy sentence. *See* 18 U.S.C. 1028A(a)(1) & (c)(5). Accounting for that statutorily mandated consecutive term, U.S. Sentencing Guidelines § 2B1.6 Application Note 2 states that "[i]f a sentence under [§ 2B1.6] is imposed in conjunction with a sentence for [conspiracy to commit wire fraud], do not apply any specific offense characteristic for the *transfer, possession, or use of a means of identification* when determining the sentence for the [conspiracy] offense." (emphasis added). Thus, "when a defendant receives the two-year consecutive sentence on the identity theft count,

9

her sentence for any underlying offense is not eligible for a 2-level increase for transfer, possession, or use of false identification." *United States v. Cruz*, 713 F.3d 600, 607 (11th Cir. 2013) (quotes omitted).

That, Taylor argues, prohibited the district judge from applying enhancements for loss amount, number of victims, and sophisticated means because they relate to her using other people's means of identification, which, she says, § 2B1.6 accounts for. Doc. 4-5 ("The mandatory two-year sentence Taylor received for aggravated identity theft accounted for the underlying offense and any enhancements that would apply based on relevant conduct."). Her attorney's failure to make that argument, in turn, qualifies as ineffective assistance. *Id.* at 6.

Taylor never received any transfer, possession, or use enhancement prohibited by § 2B1.6, however. Her enhancements -- number of victims, loss amount, and sophisticated means -- strike at different relevant conduct (and thus are found in different Guidelines provisions),[5] not that covered by § 2B1.6 and her aggravated identity theft conviction itself. Put differently: § 2B1.6 enhancements and § 1028A itself punish the

---

[5] *See* U.S.S.G. §§ 2B1.1(b)(1)(G) (loss amount); (b)(10)(C) (sophisticated means); (b)(2)(B) (number of victims).

transfer, use, and possession of someone else's means of identification. Enhancements for the number of victims, loss amount, and sophisticated means do not (they address precisely what their titles describe, which indubitably is *not* transfer, use, or possession of means of identification). Arguing to the contrary would have been fruitless and not ineffective assistance.[6]

### C. IAC - Loss Amount

Despite litigating "the district court's amount of loss determination" on appeal, *Taylor*, 578 F. App'x at 967, Taylor tries to bite that apple again here. Balbo, she says, failed "to put the government to their burden of establishing the factual basis" for the loss enhancement applied to her sentence. Doc. 155 at 2. That allegedly deficient performance "affected the outcome of her sentencing" because it "allow[ed] the matter to conclude resting upon unsupported spreadsheets." *Id.* at 3.

---

[6] Regardless of enhancements, Taylor's 71 month sentence remained well below the 22 year statutory maximum. *See* 18 U.S.C. § 1343 (imposing 20 year maximum for conspiracy to commit wire fraud); 18 U.S.C § 1028A (two year sentence for aggravated identity theft, to run consecutively to any sentence for a predicate offense).

The Eleventh Circuit saw things differently and found that "[t]he evidence [presented at sentencing] showed that . . . the [district] court properly determined the amount of loss." *Taylor*, 578 F. App'x at 968. Even though Taylor couches her loss amount attack here in IAC terms, she still attacks the loss amount. *See United States v. Johnson*, 2010 WL 2220306 at * 3 (N.D. Fla. May 11, 2010) ("Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.") (citing *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("[I]dentical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects.")). Indeed, she makes essentially the same arguments in her § 2255 motion as she did on appeal. *Compare* doc. 145-1 at 21-26 (Taylor's appellate brief), *with* doc. 143 at 7-10. That's one dog that never hunts. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."). Hence, her loss-amount IAC claim must fail.[7]

---

[7] The Government also correctly notes that Taylor's collateral attack waiver bars

## D. IAC - The "Victims" Enhancement

In her third claim, Taylor faults Balbo for failing to object to her sentencing enhancement based on the number of victims. *See* doc. 143 at 10. She says that from January to March 2011 (*i.e.*, during her time at "The Office") only seven names were used to file false tax returns, and that even those people suffered no actual losses (in her eyes only the IRS lost money because of the conspiracy). *Id.* at 11. Consequently, the Government cannot pin all 155 false returns on her for enhancement purposes. *Id.* Balbo therefore should have objected and his failure to do so, in Taylor's eyes, constitutes ineffective assistance. *Id.*

Once again, her collateral attack waiver bars Taylor's IAC claim. She signed the plea agreement, she testified she understood the waiver's implications, and the district judge questioned her extensively about the same. She cannot now circumvent its application and her "victims" IAC claim accordingly perishes. *See Benitez–Zapata*, 131 F.3d at 1446.

---

this claim. Doc. 145 at 8-9. Taylor's plea agreement signature and plea hearing testimony make clear that she understood the waiver, and the district court questioned her specifically about the waiver. It's thus valid and bars this claim. *Benitez–Zapata*, 131 F.3d at 1446.

### E. IAC - Actual Innocence

Taylor's final IAC claim contends that, because she's "actually innocent" of the aggravated identity theft charge, Balbo's advice to nevertheless plead guilty constituted ineffective assistance. Doc. 143 at 12-13. Keying on dates to the exclusion of other facts adduced at her plea hearing, Taylor argues that her involvement in the conspiracy postdated the identity theft that underlay count 11 of her indictment. Doc. 155 at 5. Thus, she says, "the mandatory 24 months should be removed from her sentence." Doc. 155 at 5.

This claim also is waived but even if not, it fails outright. Eleventh Circuit "precedent forbids granting habeas relief based upon a claim of actual innocence." *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007). That's because it is not the role of a federal habeas court "to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial." *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *see also Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of

fact."). Consequently, "[a]ctual innocence is not itself a substantive claim, but rather serves only to lift [a] procedural bar." *United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005); *see also McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1928 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations."). Taylor faces no such bar and absent some constitutional claim to undergird her actual innocence assertion, it must fail.

Even if the claim could stand on its own, it would still fail. Taylor's signed plea agreement -- which, again, Taylor signed and agreed to[8] -- contained the following factual basis for her guilty plea, which expressly identified her victims:

> The defendant understands that Count 11 of the Indictment charges that on or about August 16, 2010, in the Southern District of Georgia, the defendant, aided and abetted by Asha K. Spaulding, Dwan T. Scott, Jenna D. Scott, Gregory F. Smith, Jr., and others, did knowingly possess and use, without lawful authority, means of identification of another person, that is, the name, date of birth, and social security number of an individual whose initials are L.S.,

---

[8] Taylor attempts to sidestep her plea by pointing out that "it was the government not Taylor that penned the plea agreement." Doc. 155 at 3. True enough, but unavailing, since Taylor signed the agreement and assented to its factual recitation at the plea hearing.

during and in relation to a felony violation of Title 18, United States Code, Section 1343, specifically, Wire Fraud, as described in Count Two of this Indictment, all in violation of Title 18, United States Code, Section 1028A. The defendant further understands that her guilty plea constitutes proof as to this count.

Doc. 117 at 8.

Too, Taylor admitted at her plea hearing that her fraud crimes occurred both before and after the January to March 2011 time she spent at "The Office." *See* doc. 137 at 62-63 (agreeing with FBI Agent Marcus Kirkland's testimony that "[t]his particular group of individuals[, including Taylor,] in this part of the fraud singly were responsible for more victims being impacted as a result of the fraud because of the fraud that they were committing, not only in 'The Office,' but the times before "The Office" and times after "The Office.") (footnote added).

> While § 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," . . . "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." [*Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)]. As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74, 97 S.Ct. 1621; *see id.* at 80 n. 19, 97 S.Ct. 1621 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most

extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74, 97 S.Ct. 1621.

*Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).

Taylor's "newly minted" allegations that she played no role in the conspiracy outside of January to March 2011, standing alone and without any other evidence, "are insufficient to mandate an evidentiary hearing in the face of a Rule 11 record detailing statements by the petitioner that" she was responsible for fraud perpetrated outside the months she spent at "The Office." *Id.* at 1217 (quoting *Matthews v. United States*, 533 F.2d 900, 902 (5th Cir.1976)). What she now asserts -- that she played no role in the conspiracy beyond the three months of admitted involvement -- ""is directly contradicted by [her] testimony . . . at the guilty plea hearing." *Frison v. Reynolds*, 2014 WL 7368940 at * 13 (S.D. Ala. Dec. 29, 2014). Never does she attempt to explain this discrepancy, or why her "representations at the guilty plea hearing should [be] disregarded." *Id.* Faced with sworn testimony in a thorough and wide-ranging plea colloquy that she pled voluntarily and intelligently, and unsworn, self-serving testimony to the opposite effect at a time when

Taylor has every incentive to embellish, *see Winthrop-Redin*, 767 F.3d at 1216, the Court finds the plea testimony dispositive. Hence, her "actual innocence" claim fails.[9]

## III. CONCLUSION

Tidaesha Taylor's § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb.9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

---

[9] To the extent Taylor claims she pled unknowingly and involuntarily to count 11 because Balbo advised her to do so despite awareness of her innocence, that claim fails, too, for the same reasons that her actual innocence claim fails.

**SO REPORTED AND RECOMMENDED,** this  24th   day of February, 2016.

_/s/ G. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA